Filed 8/2/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| PATRICE HONEYCUTT, | B281982 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC526794) |
| v. | |
| JPMORGAN CHASE BANK, N.A., et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge. Reversed.

Law Office of Twila S. White, Twila S. White and Imran A. Rahman for Plaintiff and Appellant.

Seyfarth Shaw, Jeffrey A. Wortman, Candace Bertoldi and Timothy M. Fisher for Defendants and Respondents JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co.

_____

# INTRODUCTION

The Code of Civil Procedure and the Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards) require arbitrators in contractual arbitrations to make various disclosures about themselves, their experience, and their activity as private judges or, as they are sometimes called, "dispute resolution neutrals." Failure to make required disclosures may be a ground for disqualifying the arbitrator and, if the arbitrator was actually aware of the ground for disqualification, for vacating an award.

In this case, the arbitrator did not comply with several applicable disclosure requirements, which gave rise to multiple grounds for disqualification. Because the arbitrator was actually aware of at least one of the grounds for disqualification, the resulting arbitration award was subject to vacatur. Therefore, we reverse the trial court's order denying the petition to vacate the award and granting the petition to confirm it.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Appointment and Disclosure*

On November 6, 2013 Patrice Honeycutt filed this action against her former employer, JP Morgan Chase Bank, alleging causes of action for discrimination, retaliation, wrongful termination, and related claims. On March 7, 2014 the trial court granted Chase's petition to compel arbitration of Honeycutt's complaint.

On July 17, 2014 the American Arbitration Association (AAA), a dispute resolution provider organization,[1] notified the parties the AAA had appointed a retired judge to serve as the arbitrator. The notice of appointment included a copy of the AAA's disclosure worksheet, completed by the arbitrator, which instructed the arbitrator: "It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, and social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration . . . it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The AAA will call the disclosure to the attention of the parties."

The worksheet further advised the arbitrator: "California Code of Civil Procedure § 1281.9 (which incorporates CCP § 170.1 and the [Ethics Standards]) . . . and CCP § 1281.95 require certain disclosures by a person nominated or appointed as an arbitrator. While the AAA makes this worksheet available to neutrals appointed to cases administered by the AAA, the

---

[1]     A "dispute resolution provider organization" or "provider organization" is a "'nongovernmental entity that, or individual who, coordinates, administers, or provides the services of two or more dispute resolution neutrals.'" (*Jevne v. Superior Court* (2005) 35 Cal.4th 935, 945.)

3

ultimate obligation for compliance with any statutory requirements, Rules and/or Ethics Standards lies with the neutral. Accordingly, please review the relevant statutory provisions and the enclosed materials before completing this worksheet." The notice of appointment included a link to the Ethics Standards on the website of the California Judicial Branch.

The 11-page worksheet asked the arbitrator to answer a series of questions "yes" or "no." For example, the worksheet asked whether the arbitrator had a significant personal or attorney-client relationship with a party or lawyer for a party, a financial interest in a party to or the subject matter of the arbitration, or a professional or occupational license that had ever been revoked. The arbitrator had answered most of the questions "no," and signed and dated the worksheet. At the end of the worksheet was a summary of the general provisions of the Ethics Standards governing an arbitrator's disclosure obligations.

Unfortunately, the parties received only 10 of the 11 pages of the arbitrator's disclosure worksheet. The missing page, page five, included Question No. 27, which asked whether the arbitrator had any time constraints that would interfere with the arbitrator's ability to commence or complete the arbitration in a timely manner, and Question No. 28, which asked whether the arbitrator, during the pendency of the arbitration, would "entertain offers of employment or new professional relationships in any capacity other than as a lawyer, expert witness, or consultant from a party or a lawyer for a party, including offers to serve as a dispute resolution neutral in another case." The arbitrator answered "no" to Question No. 27 and "yes" to answer No. 28. On page six, which the parties did receive, under the

4

heading "Please explain any 'yes' answer to any question above and/or make any additional disclosures you believe are appropriate," the arbitrator wrote: "#28. I will entertain offers to serve as a dispute resolution in other cases. I will evaluate any potential conflict at that time prior to accepting [the] offer."

The disclosure documents from the AAA also included a document signed by the arbitrator and titled "The Arbitrator's Oath." In the oath, the arbitrator attested that the arbitrator had "conducted a conflicts check, including a thorough review of the information" provided by the AAA about the case, and had performed all "obligations and duties to disclose in accordance with the Rules of the [AAA], Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures." The oath concluded, immediately above the signature line, "The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the [AAA] . . . ."[2] A note at the bottom of the arbitrator's oath repeated the AAA's warning that the arbitrator, not the AAA, was responsible for complying with the disclosure requirements.

B.     *Arbitration and Challenge*

The arbitrator conducted a six-day arbitration in April 2016. On August 30, 2016 the arbitrator issued an interim award in favor of Chase and against Honeycutt on all of her claims.

---

[2]     Although the oath states the arbitrator was "duly sworn," the date of the "sworn before me" line in the certification is blank.

5

Counsel for Honeycutt was surprised she lost. On September 12, 2016 she wrote a letter to the AAA's manager of alternative dispute resolution services, stating: "It is rather stunning that [the arbitrator] found that [Honeycutt] did not meet her burden on every single cause of action given how strong the evidence was in [her] favor and the presentation of [her] case at the arbitration hearing." Counsel for Honeycutt asked the manager to identify every other case the arbitrator had accepted involving Chase and its counsel of record. Counsel also stated for the first time that she had not received all pages of the notice of appointment in July 2014 and that the copy she received was "missing a page, omitting questions 21 through 28 and their responses." Counsel wrote: "Be advised that we intend to vacate the award and request that further proceedings are stayed until I have received the requested information from your office."

On September 19, 2016 the manager sent counsel for Honeycutt the missing page of the arbitrator's July 17, 2014 disclosure worksheet. The manager also sent counsel for Honeycutt 10 letters from the arbitrator's case manager stating that, during the pendency of the arbitration between Honeycutt and Chase, the arbitrator had been appointed to serve as an arbitrator in eight other employment cases involving counsel for Chase and two other cases (one of which was an employment case) involving Chase. The parties had previously received only four of the eight letters concerning employment cases involving counsel for Chase.[3]

---

[3]     The four notices the parties previously received were dated February 26, 2015, April 30, 2015, May 18, 2016, and August 11, 2016. The four notices the parties had not received were dated December 16, 2014, January 12, 2016, January 22, 2016, and

6

On September 28, 2016 counsel for Honeycutt sent the manager a formal objection to the arbitrator's continuing to serve in this matter and a request for the arbitrator's "immediate disqualification." Citing relevant provisions of the Code of Civil Procedure and the Ethics Standards, counsel for Honeycutt argued, among other things, that she had not received the entire initial disclosure by the arbitrator (because of the missing page) and that the arbitrator "failed to disclose all cases that she accepted from [Chase's] counsel during the pendency of the arbitration." Specifically, counsel for Honeycutt asserted the arbitrator had failed to disclose "at least four additional cases with [Chase's] law firm since being appointed to this matter."

On October 10, 2016 the manager advised counsel for Honeycutt the AAA had denied Honeycutt's request to disqualify the arbitrator. The manager wrote: "After careful consideration of the parties' contentions, the [AAA] has determined that [the arbitrator] will be reaffirmed as an arbitrator in the . . . matter."

On November 15, 2016 the arbitrator issued a final award ordering Honeycutt to "take nothing on her claims," denying Chase's request for costs, and ruling the $5,240 in arbitration administrative fees and the $62,067.50 in arbitrator compensation and expenses were "to be borne as incurred."

C.    *Confirmation*

Honeycutt filed a petition to vacate the arbitration award, and Chase filed a petition to confirm it. In her petition to vacate (and her opposition to Chase's petition to confirm) Honeycutt

---

August 3, 2016. The arbitration was pending from July 2014 to November 2016.

7

argued the arbitrator violated the Ethics Standards by failing to disclose offers of employment, including employment as an arbitrator or mediator in other cases involving the parties or attorneys in the arbitration. Honeycutt repeated her argument the arbitrator's July 17, 2014 initial disclosure was incomplete because it did not include the page with the question and affirmative answer concerning whether the arbitrator would accept offers to serve as a neutral arbitrator in other cases involving Chase or its attorneys. Honeycutt also contended, as she had before the AAA, the arbitrator failed to disclose four of the eight other cases the arbitrator accepted involving counsel for Chase while the arbitration was pending. Honeycutt argued these and other grounds for disqualification entitled her to vacate the arbitration award.

Chase argued the arbitrator made all initial disclosures in a timely manner because, although the parties did not receive the worksheet page with the question and answer regarding whether the arbitrator would entertain offers from the parties or their attorneys to serve as a dispute resolution neutral in other matters, the parties did receive the page with the explanation for the arbitrator's answer, which stated the arbitrator would entertain such offers. Chase also pointed out that, because "[i]t was readily apparent that a page was missing from the disclosures when [Honeycutt] first received the initial disclosure statement," her request to disqualify the arbitrator was untimely. Chase contended Honeycutt was "well aware of the Arbitrator's intent to accept offers to serve as a neutral in other cases, including cases involving the same parties and lawyers in this case, because the Arbitrator's handwritten note on the following

page alone provided [her] with all the information that she needed to assess whether disqualification was appropriate."

Regarding the arbitrator's failure to disclose during the arbitration four of the eight other matters involving counsel for Chase, Chase asserted Honeycutt had not identified any mandatory disclosure the arbitrator failed to make (even though Honeycutt had identified at least four of them) and pointed to a September 23, 2016 email from the AAA manager stating she had "provided all supplemental disclosure letters showing the new cases involving the Parties/Attorneys to this matter after the initial disclosure[s] were made."[4]  Citing a former version of the Ethics Standards, Chase also argued that the arbitrator was not required to provide supplemental disclosures of other matters in which the arbitrator was serving as a dispute resolution neutral involving the same parties and lawyers.

The trial court confirmed the arbitration award.  When counsel for Honeycutt argued at the hearing that the arbitrator did not disclose the four other cases involving counsel for Chase until after the arbitration, the court stated, "But they were made?  Okay.  The petition to confirm is granted; the petition to

---

[4]  This citation was misleading.  The manager's statement referred to providing counsel for Honeycutt, in response to her request, the 10 disclosure letters after the arbitrator had issued the interim award.  The manager was responding to a statement by counsel for Honeycutt that she was "awaiting a full list" of disclosure documents "as requested" from the manager.  The manager's September 23, 2016 email did not "confirm" the arbitrator made all supplemental disclosures during the pendency of the arbitration.  Chase has abandoned this argument on appeal.

vacate is denied." The court also stated the "'disclosure requirements are intended to ensure the impartiality of' the arbitrator, not to mandate the disclosure of all matters that a party might wish to consider in deciding whether to oppose or accept[ the] selection of an arbitrator.'" The court found "the arbitrator sufficiently made the required disclosures, as further outlined in the opposition to the motion to vacate." Finally, the court found "there was no prejudice shown as to any alleged ground to vacate."

The trial court entered judgment confirming the arbitration award. Honeycutt timely appealed.

## DISCUSSION

A. *Arbitrator Disclosure Obligations and Grounds for Vacating an Arbitration Award*

1. *Disclosure Under the Ethics Standards*

"Courts have long struggled with the problem of ensuring not only the neutrality but also the perception of neutrality of arbitrators, who wield tremendous power to decide cases and whose actions lack, for the most part, substantive judicial review." (*Mahnke v. Superior Court* (2009) 180 Cal.App.4th 565, 573.) "'[B]ecause arbitrators wield such mighty and largely unchecked power, the Legislature has taken an increasingly more active role in protecting the fairness of the process.'" (*Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1105; see *Gray v. Chiu* (2013) 212 Cal.App.4th 1355, 1362 ["the Legislature has provided '"for judicial review in circumstances involving serious problems with . . . the fairness of

the arbitration process"""].)  Indeed, "the Legislature has gone out of its way, particularly in recent years, to regulate in the area of arbitrator neutrality by revising the procedures relating to the disqualification of private arbitrators and by adding, as a penalty for noncompliance, judicial vacation of the arbitration award." (*Azteca Const., Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1167 (*Azteca*).)

In 2001 the Legislature "significantly revised the disclosure requirements and procedures for disqualifying arbitrators pursuant to private or contractual arbitration" and directed the Judicial Council to adopt ethical standards for neutral arbitrators.  (*Azteca, supra*, 121 Cal.App.4th at p. 1162; see Code Civ. Proc., § 1281.85.)[5]  "The 2001 legislation arose out of a perceived lack of rigorous ethical standards in the private arbitration industry.  Co-sponsored by the Governor and the

---

[5]    Code of Civil Procedure section 1281.85 provides that "a person serving as a neutral arbitrator pursuant to an arbitration agreement shall comply with the ethics standards for arbitrators adopted by the Judicial Council pursuant to this section.  The Judicial Council shall adopt ethical standards for all neutral arbitrators effective July 1, 2002.  These standards shall be consistent with the standards established for arbitrators in the judicial arbitration program and may expand but may not limit the disclosure and disqualification requirements established by this chapter.  The standards shall address the disclosure of interests, relationships, or affiliations that may constitute conflicts of interest, including prior service as an arbitrator or other dispute resolution neutral entity, disqualifications, acceptance of gifts, and establishment of future professional relationships."  Statutory references are to the Code of Civil Procedure.

11

Judicial Council, the bill sought to provide 'basic measures of consumer protection with respect to private arbitration, such as minimum ethical standards and remedies for the arbitrator's failure to comply with existing disclosure requirements.'" (*Azteca*, at p. 1165, fn. omitted.)  The Legislature was concerned "'the growing use of private arbitrators—including the imposition of mandatory pre-dispute binding arbitration contracts in consumer and employment disputes—has given rise to a largely unregulated private justice industry.'" (*Id.* at p. 1165, fn. 7; see Hillebrand, *Should California's Ethics Rules Be Adopted Nationwide?*: *Yes!  They Represent Thoughtful Solutions to Real Problems* (Fall 2002) Disp. Resol. Mag. 10 ["[t]he legislature imposed the requirement for ethics standards to 'address concerns arising through the increased use of private dispute resolution, including the creation of a dual justice system'"].)  These developments evinced "an unmistakable legislative intent to oversee and enforce ethical standards for private arbitrators." (*Azteca*, at p. 1165.)

The Judicial Council responded to the Legislature's directive by adopting the Ethics Standards to provide "protection against specific conflicts of interest where they exist." (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 260, fn. 8; see *Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 833 (*Ovitz*).)  "Pursuant to section 1281.85, the Judicial Council adopted ethics standards and requirements for neutral arbitrators.  Their express purpose is to establish the minimum standards of conduct for neutral arbitrators, to 'guide the conduct of arbitrators, to inform and protect participants in arbitration, and to promote public confidence in the arbitration process.' [Citation.]  The Ethics Standards obligate arbitrators to inform

12

themselves of matters subject to mandatory disclosure." (*Gray v. Chiu, supra*, 212 Cal.App.4th at pp. 1362-1363, fn. omitted.)

The Code of Civil Procedure and the Ethics Standards impose various disclosure obligations on neutral arbitrators. Section 1281.9, subdivision (a), provides "the arbitrator must disclose 'any ground specified in Section 170.1 for disqualification of a judge,' as well as 'matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council . . . .'" (*United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 75-76; see *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 381 (*Haworth*) ["[t]he applicable statute and standards enumerate specific matters that must be disclosed"]; *Ovitz, supra*, 133 Cal.App.4th at p. 833 ["[t]he standards require arbitrators to make comprehensive disclosures of potential grounds for disqualification"].) Significantly, "an arbitrator's duty of disclosure is a continuing one." (*Gray v. Chiu, supra*, 212 Cal.App.4th at p. 1363; accord, *Ovitz*, at p. 840; see also JAMS, Arbitrators Ethics Guidelines, Guideline V(D) ["[a]n Arbitrator's disclosure obligations continue throughout the course of the Arbitration"]; AAA, Code of Ethics for Arbitrators in Commercial Disputes, Canon II(D) ["[a]ny doubt as to whether or not disclosure is to be made should be resolved in favor of disclosure"].)

### 2. *Ethics Standards 7 and 12*

The Ethics Standards at issue in this appeal are standards 7 and 12, which the Judicial Council adopted to address the "'bias, or appearance of bias, that may flow from one side in an arbitration being a source or potential source of additional

13

employment, and thus additional income, for the arbitrator.'" (*Ovitz*, *supra*, 133 Cal.App.4th at p. 839.) Ethics standard 7 describes the disclosure obligations of a "person nominated or appointed as an arbitrator." The proposed arbitrator must make the initial disclosures listed in standard 7 in writing "[w]ithin 10 days of service of notice of the proposed nomination or appointment" (*Id.*, std. 7(c)(1)) and any required supplemental written disclosures within 10 days "after the arbitrator becomes aware of the matter" (*Id.*, std. 7(c)(2)). Thus, although the arbitrator initially makes the disclosures required by standard 7 at the outset of the arbitration, the arbitrator's duty to make these disclosures "is a continuing duty, applying from service of the notice of the arbitrator's proposed nomination or appointment until the conclusion of the arbitration proceeding." (*Id.*, std. 7(f).)

Ethics standard 7 requires the arbitrator to "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial . . . ." (Ethics Standards, std. 7(d).) Ethics standard 7(d) lists examples of such matters, including a family, attorney-client, or "significant personal" relationship with a party or lawyer in the arbitration, a financial or other interest in the outcome of the arbitration, and knowledge of "disputed evidentiary facts concerning the proceeding." (*Id.*, stds. 7(d)(2)-(3), 7(d)(7), 7(d)(11)-(13).) Ethics standard 7(d)(4)(A)(i) requires the arbitrator to disclose whether the arbitrator is serving "[a]s a neutral arbitrator in another prior or pending . . . case involving a party to the current arbitration or a lawyer for a party." Ethics standard 7(e) requires the arbitrator to disclose other matters relating to professional discipline and the arbitrator's inability to conduct and complete the arbitration in a timely manner.

14

Ethics standard 12 generally describes the disclosure obligations of an arbitrator "[f]rom the time of appointment until the conclusion of the arbitration" (Ethics Standards, std. 12(a)), although some of its provisions apply to the initial disclosures a proposed arbitrator must make. For example, Ethics standard 12(b)(1) provides that, "within ten calendar days of service of notice of the proposed nomination or appointment, a proposed arbitrator must disclose to all parties in writing if, while that arbitration is pending, he or she will entertain offers of employment or new professional relationships in any capacity other than as a lawyer, expert witness, or consultant from a party or a lawyer for a party, including offers to serve as a dispute resolution neutral in another case."[6] If an arbitrator in a consumer arbitration like this one makes that disclosure,[7] the arbitrator must also state that he or she "will inform the parties as required under [Ethics standard 12](d) if he or she subsequently receives an offer while that arbitration is pending." (Ethics Standards, std. 12(b)(2)(A).)

---

[6] Ethics standard 12(a) prohibits an arbitrator from entertaining or accepting "any offers of employment or new professional relationships as a lawyer, an expert witness, or a consultant from a party or a lawyer for a party in the pending arbitration."

[7] "Consumer arbitration" includes an arbitration pursuant to a contract with "[a]n employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement." (Ethics Standards, std. 2(d)(1), 2(e)(4).) There is no dispute the rules governing consumer arbitrations apply to this arbitration.

15

Ethics standard 12(d), in turn, provides that, if the arbitrator makes the disclosure in Ethics standard 12(b) regarding entertaining offers to serve as a dispute resolution neutral in another case involving the same parties or lawyers, "the arbitrator may entertain such offers.  However, in consumer arbitrations, from the time of appointment until the conclusion of the arbitration, the arbitrator must inform all parties to the current arbitration of any such offer and whether it was accepted as provided in this subdivision."  The arbitrator must notify the parties in writing "within five days of receiving the offer and, if the arbitrator accepts the offer, must notify the parties in writing within five days of that acceptance.  The arbitrator's notice must identify the party or attorney who made the offer and provide a general description of the employment or new professional relationship that was offered including, if the offer is to serve as a dispute resolution neutral, whether the offer is to serve in a single case or multiple cases."  (Ethics Standards, std. 12(d)(1); see Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2017) ¶¶ 7:142.2-7:142.3 ["[a]n arbitrator in a consumer arbitration must give written notice of any offer within *five days* of receipt (identifying the attorney or party making the offer, description of the employment or relationship offered, and if the offer is to serve as ADR neutral, whether it is for one or multiple cases)" and, "[i]f the offer is accepted, the arbitrator must give written notice to the parties within *five days* of acceptance"].)[8]

_____

[8]     The Judicial Council added these disclosure requirements to Ethics standard 12(d) in 2014 because of concerns about arbitrator neutrality and "whether the disclosure and ability to disqualify an arbitrator under [Ethics] standard 12(b) provide[d]

16

### 3.     *Vacatur Under the Code of Civil Procedure*

Judicial review of private arbitration awards is generally limited to the statutory grounds for vacating or correcting an award.  (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775; *ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP* (2017) 9 Cal.App.5th 885, 899-900 (*ECC Capital*).)  One of those statutory grounds is section 1286.2, subdivision (a)(6)(A), which provides that, if the arbitrator fails "to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware," the court "shall vacate the award." (See *Haworth*, at p. 381; *ECC Capital*, *supra*, 9 Cal.App.5th at p. 901; *Rebmann v. Rohde* (2011) 196 Cal.App.4th 1283, 1290; see also *La Serena Properties v. Weisbach* (2010) 186 Cal.App.4th 893, 903 ["[s]o important is this duty to disclose potential disqualifying relationships that a failure to disclose serves as a basis for setting aside the arbitration award"]; *Ovitz*, *supra*, 133 Cal.App.4th at p. 833 ["[o]n a showing that the arbitrator failed timely to disclose a ground for disqualification of which he or she

---

sufficient protection for parties, particularly consumer parties, against the possibility of arbitrator bias or the appearance of bias that may arise when the arbitrator receives offers of employment from another party or attorney in the arbitration."  (Report to the Judicial Council on Proposed Amendments to the Ethics Standards for Neutral Arbitrators in Contractual Arbitration, Sept. 19, 2013, p. 13.)  The Judicial Council limited these amendments to "consumer arbitrations, rather than all arbitrations, because the consumer parties in these arbitrations are typically more vulnerable, have less information and knowledge about the arbitration process, and are less able to exercise choices with regard to that process."  (*Id.* at p. 25.)

was aware, the California Code of Civil Procedure requires the vacating of any award rendered by the arbitrator"].) "On its face, the statute leaves no room for discretion. If a statutory ground for vacating the award exists, the trial court must vacate the award." (*Ovitz*, at p. 845.)

We review de novo the trial court's ruling on a motion to vacate an arbitration award based on the arbitrator's failure to make a required disclosure. We review any factual findings or resolutions of disputed factual issues for substantial evidence. (See *Haworth*, *supra*, 50 Cal.4th at p. 383; *Baxter v. Bock* (2016) 247 Cal.App.4th 775, 785.)

 

B.    *Honeycutt Waived Her Right To Vacate the Award Based on the Arbitrator's Violation of Ethics Standard 12(b)*

Ethics standard 12(b) required the arbitrator to disclose, within 10 days of the proposed appointment as an arbitrator, whether the arbitrator would entertain offers from a lawyer or party to the arbitration to serve as a dispute resolution neutral in another matter. The arbitrator did not comply with this requirement because the arbitrator's initial disclosure did not include the page containing the question asking whether the arbitrator would entertain such offers and the arbitrator's "yes" answer, even though on the next page the arbitrator made a handwritten notation stating the arbitrator would entertain such offers. And despite Chase's assertion that "the page containing responses to AAA's disclosure questions 20-28 was not included with the initial disclosures, apparently as the result of clerical error," there is no evidence of such a clerical error.

18

Moreover, even if the arbitrator had provided counsel with all pages of the disclosure worksheet, the arbitrator's handwritten explanation for the (undisclosed) answer to Question No. 28, which the parties did receive, did not comply with Ethics standard 12(b)(2), which requires the arbitrator in a consumer arbitration to state that the arbitrator will inform the parties if the arbitrator receives an offer. As noted, the arbitrator's handwritten explanation of the missing response to Question No. 28 did not state that the arbitrator would inform the parties if the arbitrator received an offer, only that the arbitrator would "evaluate any potential conflict" before accepting the offer. The rule requires disclosure regardless of the arbitrator's personal evaluation of whether there is a conflict and even if the arbitrator does not accept the offer.

Honeycutt, however, waived her right to vacate the award based on the arbitrator's failures to comply with Ethics standard 12(b). A party may waive the right to disqualify an arbitrator by failing to object to the arbitrator's failure to disclose a matter the Ethics Standards require the arbitrator to disclose. Section 1281.91, subdivision (c), provides that the "right of a party to disqualify a proposed neutral arbitrator pursuant to this section shall be waived if the party fails to serve" a notice of disqualification within 15 days after the arbitrator fails to comply with the disclosure obligations under section 1281.9 or the Ethics Standards, "unless the proposed nominee or appointee makes a material omission or material misrepresentation in his or her disclosure." (See *United Health Centers of San Joaquin Valley, Inc. v. Superior Court*, *supra*, 229 Cal.App.4th at p. 83 [section 1281.91, subdivision (c), "states that a party's right to disqualify a proposed neutral arbitrator 'shall be waived' if the party fails to

19

serve a notice of disqualification within the period set forth therein"]; *Ovitz, supra,* 133 Cal.App.4th at p. 846 ["[s]ection 1281.91, subdivision (c) contains a limited provision under which a party is deemed to have waived the right to disqualify the arbitrator if the party fails to act within the 15-day time period provided in section 1281.91, subdivisions (a) or (b)"].)

Honeycutt knew in July 2014, upon learning the identity of the proposed arbitrator and receiving the incomplete disclosure worksheet, that the arbitrator had failed to send the parties the page containing Question Nos. 21-28. Honeycutt also knew that the arbitrator had answered Question No. 28 and that the answer related to a question about serving as an arbitrator or mediator in other cases. Honeycutt even knew the answer to Question No. 28 did not comply with Ethics standard 12(b)(2)(A) because the arbitrator's answer did not state the arbitrator would inform the parties of offers and acceptances while the arbitration was pending. By failing to serve a notice of disqualification within 15 days of receiving the arbitrator's defective disclosure, Honeycutt waived her right to disqualify the arbitrator. (See *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 846 [under section 1281.91, subdivision (c), a claimant waives the right to disqualify the arbitrator by "consent[ing] to proceed with the arbitration despite being aware of the deficiencies in [the arbitrator's] disclosure" and cannot "challenge the arbitration award on the ground that [the arbitrator's] failure to provide" sufficient information in the disclosure "constitutes a 'ground for disqualification'"].)

Honeycutt's remedy for the arbitrator's violations of Ethics standard 12(b) was to object to the defective disclosures, demand the arbitrator make complete and compliant disclosures, or move

to disqualify the arbitrator at the time.  Honeycutt was not entitled to wait and see how the arbitration turned out before raising these issues.  (See *ECC Capital*, *supra*, 9 Cal.App.5th at p. 906 ["'[t]hose who are aware of a basis for finding the arbitration process invalid must raise it at the outset or as soon as they learn of it so that prompt judicial resolution may take place before wasting the time of the adjudicator(s) and the parties'"]; *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1314 (*Mt. Holyoke*) ["if the arbitrator disclosed information or a party had actual knowledge of information putting the party on notice of a ground for disqualification, yet the party failed to inquire further, the arbitrator's failure to provide additional information regarding the same matter does not justify vacating the award"]; *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 329 ["a party who knowingly participates in the arbitration process without disclosing a ground for declaring it invalid is properly cast into the outer darkness of forfeiture"].)  As the court stated in *United Health Centers of San Joaquin Valley, Inc. v. Superior Court*, *supra*, 229 Cal.App.4th 63, in words equally applicable to Honeycutt:  "While an arbitrator has a duty to disclose all of the details required to be disclosed pursuant to section 1281.9 and the Ethics Standards, a party aware that a disclosure is incomplete or otherwise fails to meet the statutory disclosure requirements cannot passively reserve the issue for consideration after the arbitration has concluded.  Instead, the party must disqualify the arbitrator on that basis before the arbitration begins."  (*Id.* at p. 85.)  To hold otherwise would allow Honeycutt to "'"play games" with the arbitration and not raise the issue'" until she lost.  (*Cummings* at p. 328; see *Caminetti v. Pacific Mut.*

21

*Life Ins. Co. of Cal.* (1943) 22 Cal.2d 386, 392 ["'[i]t would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not'"].)

> C.   *Honeycutt Was Entitled To Vacate the Award Based on the Arbitrator's Violation of Ethics Standard 7(d)*

> 1.   *The Arbitrator Did Not Comply with Ethics Standards 12(d) and 7(d)*

As noted, Ethics standard 12(d) provides that, if the arbitrator makes the initial disclosure under Ethics standard 12(b) that the arbitrator will entertain offers to serve as an arbitrator or mediator in another case involving the same parties or lawyers, the arbitrator may entertain such offers.  And in consumer arbitrations, the arbitrator must also disclose (1) the offer (within five days of the offer) and (2) any acceptance (within five days of acceptance).  (Ethics Standards, std. 12(d)(1).)

Chase does not dispute the arbitrator violated Ethics standard 12(d).  The arbitrator accepted offers to serve as a neutral in eight other cases involving Chase's attorneys and disclosed only four of them.  Chase concedes "[i]t appears that four supplemental disclosures regarding appointment of [the arbitrator] to arbitrations or mediations in which [counsel for Chase] was counsel were . . . not promptly distributed . . . to the

22

parties."[9]  Nor does Chase dispute that the arbitrator's failure to disclose the four cases was "a failure to comply with the arbitrator's" disclosure obligations under the Ethics Standards.

Moreover, although not argued by Honeycutt, even the four disclosure letters the arbitrator sent the parties did not satisfy the arbitrator's disclosure obligations under Ethics standard 12(d) because they disclosed acceptances, but not offers, of employment as a dispute resolution neutral.  All four of the arbitrator's disclosure letters stated that the arbitrator "has been appointed by the parties to serve as an Arbitrator in a new Employment case in which [counsel for Chase] is involved."[10] There is no evidence the arbitrator ever disclosed, within five days as required by Ethics standard 12(d)(1) or otherwise, the four offers that preceded these appointments, the other four offers that preceded the undisclosed appointments, or any other offers of employment from counsel for Chase to serve as a dispute resolution neutral in other cases the arbitrator may have entertained but not accepted.

---

[9]     "Not promptly" is a euphemism for "not until after the arbitration."  As noted, the manager did not give the parties notice of the four other cases involving Chase's attorneys until after the arbitrator had issued the interim award in favor of Chase, and after counsel for Honeycutt had formally asked for copies of the missing page of the initial disclosures and of all supplemental disclosures.

[10]    The four disclosure letters also stated:  "The Arbitrator believes that his/her participation in the new case will not affect his/her neutrality in the current case."  Disclosure of such a belief is neither required nor sufficient.

23

The arbitrator also violated Ethics standard 7(d). As Chase concedes, one of the matters on the non-exclusive list of matters in Ethics standard 7(d) that an arbitrator has a continuing duty to disclose is service as an arbitrator in another pending case involving a party or lawyer for a party in the current arbitration. (Ethics Standard, stds. 7(d)(4), 7(f).) By not disclosing the four pending arbitrations with counsel for Chase, the arbitrator violated the continuing disclosure duties under Ethics standard 7(d).

### 2. *The Arbitration Award Must Be Vacated*

An arbitrator's violation of his or her disclosure obligations under the Ethics Standards, however, does not necessarily entitle a party challenging an arbitration award to an order vacating the award. As we noted in *ECC Capital*, the "statute requires vacating an award only when an arbitrator fails to disclose a ground for disqualification of which he or she was actually aware. Section 1286.2, subdivision (a)(6)(A), requires actual awareness, not inquiry or constructive awareness." (*ECC Capital, supra,* 9 Cal.App.5th at p. 903.) As the party challenging the arbitration award, Honeycutt had the burden of proving actual awareness. (See *Rebmann v. Rohde, supra,* 196 Cal.App.4th at p. 1290; *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 957.) The trial court made no finding on whether the arbitrator was aware of the ground for disqualification.[11]

---

[11] The trial court did not reach the issue whether the arbitrator was actually aware of a ground for disqualification because the trial court stated it was enough the arbitrator eventually made a disclosure after the arbitration.

24

The parties dispute whether Honeycutt had the burden to show the arbitrator was aware of the four arbitrations with counsel for Chase or, instead, to show the arbitrator was aware of the failure to disclose the offers and acceptances of the four arbitrations with counsel for Chase. Honeycutt argues it was the former, asserting it is "inconceivable" the arbitrator was unaware of the other arbitrations involving counsel for Chase. Chase argues it was the latter, asserting there was no evidence the arbitrator "was aware of any non-disclosure under Standard 12(d)(1)," which, "in turn, results in [Honeycutt's] failure to meet the *scienter* requirement for vacating the award under section 1286[.2, subdivision] (a)(6)(A)." Chase asserts that, although the four missing disclosures "were timely prepared," through "some inadvertence . . . they did not reach the parties." Chase suggests that the arbitrator worked with the AAA and another dispute resolution provider organization and that the AAA received the four missing disclosure letters from the other provider organization but did not send them to the parties."[12]

---

[12] There is no evidence that anyone at either provider organization timely prepared the four (actually, including the offers, 12) missing disclosure letters or that the arbitrator, the case manager, or anyone else at the AAA inadvertently failed to send out the notices. We also question whether an arbitrator, unlike an attorney, can blame a case manager, assistant, or secretary for an arbitrator's failure to comply with the Ethical Standards. (See *Layton v. State Bar* (1990) 50 Cal.3d 889, 900 [an attorney "cannot escape responsibility for his failure . . . by blaming his secretary" because "[a]n attorney has an obligation to adequately supervise his employees"]; *Vaughn v. State Bar* (1972) 6 Cal.3d 847, 857 ["though an attorney cannot be held responsible for every detail of office procedure, he must accept responsibility to supervise the work of his staff"].)

25

Honeycutt is correct. If the arbitrator complies with the disclosure requirements of Ethics standard 12(d), the arbitrator does not also have to make the same disclosures under Ethics standard 7. Ethics standard 12(d)(3)(B) provides that, "[i]f an arbitrator has informed the parties in a pending arbitration under [Ethics standard 12(d)](1)," the "arbitrator is not also required to disclose that offer or its acceptance under [Ethics] standard 7."[13] But if the arbitrator does not make the required disclosures under Ethics standard 12(d), the arbitrator must still comply with the disclosure obligations of Ethics standard 7, which, as noted, are continuing. Therefore, where the arbitrator fails to comply with the disclosure requirements of Ethics standard 12(d), a party seeking to vacate an award does not have to show the arbitrator was actually aware of the failure to disclose because, in that situation, Ethics standard 7(d) governs the arbitrator's disclosure obligations.

Under Ethics standard 7(d), an arbitrator must disclose "matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial," including service as an arbitrator for a party or lawyer for a party. (Ethics Standards, std. 7(d)(4)(A)(i).) Under section 1281.91, subdivision (b)(1), the pending arbitrations were grounds for disqualification of the arbitrator because they were "matters required to be disclosed by the [Ethics Standards]."

---

[13] Ethics standard 7(b)(2)(b) similarly provides that, if the arbitrator "has informed the parties in the pending arbitration about any such offer and the acceptance of any such offer as required by subdivision (d) of standard 12, the arbitrator is not also required under this standard to disclose that offer or the acceptance of that offer to the parties in that arbitration."

(§ 1281.9, subd. (a)(2).)  The arbitrator here was actually aware of the four other pending arbitrations involving counsel for Chase. Therefore, under section 1286.2, the arbitrator's failure to disclose the four arbitrations with counsel for Chase was a failure "to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware," which requires vacatur of the award.  (See *Mt. Holyoke*, *supra*, 219 Cal.App.4th at p. 1315 [arbitrator's "failure to timely disclose [a] ground for disqualification of which he was then aware compels the vacation of the arbitrator's award"]; Comment to Standard 7 ["[f]ailure to disclose, within the time required for disclosure, a ground for disqualification of which the arbitrator was then aware is a ground for *vacatur* of the arbitrator's award"].)

To vacate an arbitration award under section 1286.2 for a violation of Ethics standard 7(d), the party challenging the award must show that the arbitrator was aware he or she was serving as an arbitrator in a pending arbitration involving the same parties or lawyers.  Service as an arbitrator is the "matter" the arbitrator must disclose within 10 days of becoming aware of it under Ethics standard 7(c)(2) and the ground for disqualification under sections 1281.9, subdivision (a)(1), and 1281.91.  An arbitrator may be unaware a case manager failed to send out a notice, an assistant accidentally deleted an attorney from a proof of service, or an envelope or email was incorrectly addressed or lost in the mail or cyberspace.  But an arbitrator knows he or she has an arbitration, and knows the parties and attorneys involved in that arbitration.  (Cf. *Ovitz*, *supra*, 133 Cal.App.4th at p. 845 [an arbitrator is "aware of his own intent to entertain" offers of employment].)

27

Finally, Honeycutt did not waive her right to vacate the award based on the arbitrator's failure to make required disclosures under Ethics standard 7(d). The arbitrator did not disclose the four other matters involving counsel for Chase in which the arbitrator served as a dispute resolution neutral until after the arbitrator had completed the arbitration hearing and issued an interim award (and the arbitrator never disclosed any offers of employment to serve as a neutral). A party cannot waive a right she does not know she has. (See *Earl v. Saks & Co.* (1951) 36 Cal.2d 602, 609 ["'[o]ne cannot waive or acquiesce in a wrong while ignorant thereof'"]; *Tremaine v. Phoenix Assur. Co.* (1935) 6 Cal.App.2d 552, 557 ["'a person cannot waive that which he does not know'"].) The waiver provision in section 1281.91, subdivision (c), "applies only when the proposed arbitrator has made the requisite disclosure. This is made clear by the exception to the waiver rule posited in the last clause of the first sentence of the subdivision: '. . . unless the proposed nominee or appointee makes a material omission or material misrepresentation *in his or her disclosure.*'" (*International Alliance of Theatrical Stage Employees, etc. v. Laughon* (2004) 118 Cal.App.4th 1380, 1392; see *Ovitz, supra,* 133 Cal.App.4th at p. 846 [no waiver of the right to vacate an arbitration award where the arbitrator's disclosure contained a material omission]; see also *Gray v. Chiu, supra*, 212 Cal.App.4th at p. 1366 [rejecting waiver and estoppel arguments because the evidence of what the arbitrator failed to disclose "surfaced long after the . . . disclosure period" and because the arguments "assume[ed] that someone other than the neutral arbitrator can effectively" make the disclosure].) When the AAA manager belatedly sent counsel for Honeycutt notice of the four arbitrations on September 19,

28

2016, Honeycutt moved to disqualify the arbitrator on September 28, 2016, within the 15 days required by section 1281.91, subdivision (c).

The arbitrator disclosure rules are strict and unforgiving. And for good reason. Although dispute resolution provider organizations may be in the business of justice, they are still in business. The public deserves and needs to know that the system of private justice that has taken over large portions of California law produces fair and just results from neutral decisionmakers. (See *Gray v. Chiu, supra*, 212 Cal.App.4th at p. 1366 [while the rule under section 1286.2 requiring the court to vacate the award "seems harsh, it is necessary to preserve the integrity of the arbitration process"]; *Advantage Medical Services, LLC v. Hoffman* (2008) 160 Cal.App.4th 806, 822 ["'neutrality of the arbitrator [was of] . . . crucial importance'" to the Legislature]; *Azteca, supra*, 121 Cal.App.4th at p. 1168 ("[o]nly by adherence to the [Arbitration] Act's prophylactic remedies can the parties have confidence that neutrality has not taken a back seat to expediency"].) Although the disclosure rules the arbitrator violated here may seem technical, they are part of the Legislature's effort to ensure that private arbitrations are not only fair, but appear fair. (See *Ceriale v. AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 504 [arbitration award may be vacated where "the record reveals facts which might create an impression of possible bias in the eyes of the hypothetical, reasonable person"].) "That all may drink with confidence from their waters, the rivers of justice," whether they flow through our public or private systems of dispute resolution, "must not only be clean and pure, they must appear so to all reasonable men and women." (*U.S. v. State of Ala.* (11th Cir. 1987) 828 F.2d 1532, 1552.)

29

## DISPOSITION

The judgment is reversed and remanded with directions for the trial court to vacate its order granting the petition to confirm the arbitration award and denying the petition to vacate it, and to enter a new order denying the petition to confirm the award and granting the petition to vacate it. Honeycutt is to recover her costs on appeal.


SEGAL, J.

We concur:


PERLUSS, P. J.


FEUER, J.