Filed 6/13/22  Fahim v. Laz Parking Cal. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| SHARIF FAHIM,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>LAZ PARKING CALIFORNIA, LLC et al.,<br><br>  Defendants and Respondents. | B309996<br><br>(Los Angeles County Super. Ct. No. BC630927) |

APPEAL from an order of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.

Law Office of Twila S. White and Twila S. White for Plaintiff and Appellant.

Jackson Lewis, Theresa M. Marchlewski, Dylan B. Carp, and Sarah H. Scheinhorn for Defendants and Respondents.

Plaintiff and appellant Sharif Fahim (plaintiff) was compelled to arbitrate employment related claims against defendants and respondents LAZ Parking California, LLC (LAZ Parking) and Conrad Midolo. The arbitrator dismissed plaintiff's claims with prejudice. In this appeal from the trial court's order denying plaintiff's petition to vacate the arbitration award and granting defendants' petition to confirm the award, plaintiff asks us to decide whether an arbitrator has a continuing duty to make certain disclosures regarding matters handled by the dispute resolution provider organization (but not the individual arbitrator assigned to his matter) that involve the parties or their attorneys.

## I. BACKGROUND

### A. *Initial and Supplemental Disclosures*

In August 2016, plaintiff filed a civil complaint against defendants alleging employment discrimination and other causes of action. The trial court granted defendants' motion to compel arbitration before JAMS pursuant to the parties' agreement, and the arbitration was heard by retired judge George H. King (Judge King).

Judge King made initial disclosures in September 2017 concerning his and JAMS's business with the parties and their attorneys.[1] According to the disclosures, Judge King was involved in one ongoing arbitration involving the law firm representing defendants, Jackson Lewis, P.C. (Jackson Lewis); none of the individual attorneys representing defendants were

---

[1] These disclosures addressed the previous five years for Judge King and the previous two years for JAMS.

2

involved in that other arbitration.  JAMS administered five matters involving plaintiff's attorney and her firm, 499 matters involving Jackson Lewis (including several involving defendants' individual attorneys), and one matter involving LAZ Parking.[2]

Roughly a year later, in August 2018, plaintiff's attorney sent an email to JAMS inquiring as to "any additional disclosures since the initiation of the Fahim matter involving [Judge King]." JAMS confirmed no additional disclosures were required at that time.  Plaintiff's attorney requested additional disclosures concerning Judge King and JAMS again in November 2018, and JAMS again confirmed no further disclosures were required.[3]

Judge King made supplemental disclosures in November 2019 when a new attorney and law firm associated in as counsel for plaintiff.  The supplemental disclosures indicated Judge King had no new disclosures to make as an individual arbitrator and reported the previously disclosed arbitration involving Jackson Lewis had settled.  The supplemental disclosures further revealed JAMS had since administered three matters involving plaintiff's original attorney and her firm, 13 matters involving

---

[2]     A header appearing on every page of the JAMS disclosure report notes that cases administered out of its Denver, Colorado office are excluded and invites the parties to request Denver disclosures if desired.  Plaintiff made no such request.

[3]     Plaintiff's attorney also claimed, in communicating with JAMS in November 2018, that she never received Judge King's September 2017 initial disclosures.  JAMS replied it previously sent those disclosures twice, in September 2017 and August 2018. Plaintiff's attorney responded with follow-up questions that cited specific pages of the disclosure packet, but she maintains (see discussion, *post*) she did not receive the initial disclosures.

plaintiff's new attorney, 642 matters involving Jackson Lewis, and one new matter involving LAZ Parking.

On January 9, 2020, Judge King notified the parties he became an "owner panelist" of JAMS as of January 1, 2020. His disclosure stated that "JAMS has approximately 400 neutrals on its panel, and a little over one quarter of JAMS neutrals have an ownership share in the company. Each owner holds one share and there are no outside shareholders. Owners are not privy to information regarding the number of cases or revenue related to cases assigned to other panelists. No shareholder's distribution exceeds .1% of JAMS total revenue in a given year. Shareholders are not informed about the extent to which their profit distribution may be impacted by any particular client, lawyer or law firm and shareholders do not earn credit for the creation or retention of customer relationships."[4] The January 9 disclosure also reminded the parties they had "already received institutional disclosures regarding the parties' usage of JAMS at the outset of this case."

---

[4] Judge King's initial disclosures (before he had an ownership interest in JAMS) noted that "[e]ach JAMS neutral, including me, has an economic interest in the overall financial success of JAMS. In addition, because of the nature and size of JAMS, the parties should assume that one or more of the other neutrals who practice with JAMS has participated in an arbitration, mediation or other dispute resolution proceeding with the parties, counsel or insurers in this case and may do so in the future."

4

*B.     Arbitration and Subsequent Requests for Further*
*       Disclosures*

The arbitration hearing to decide plaintiff's claims was held in November 2018, December 2018, and January 2019; the matter was submitted for decision in November 2019. In January 2020, Judge King issued an award dismissing all of plaintiff's claims with prejudice. After losing the arbitration, plaintiff sent JAMS several requests for additional disclosures.

On February 3, 2020, plaintiff requested "all invoices and amount of payment for the services [Judge King] rendered in [this] matter." Then, on February 5, 2020,[5] plaintiff expressed "shock[ ] that . . . [he] lost on every single cause of action," accused Judge King of "coach[ing] defense witnesses" and "other inappropriate conduct" during the arbitration hearing, and demanded additional disclosures. Plaintiff's specific requests sought additional information concerning any business between Judge King on the one hand and defendants, Jackson Lewis, and defendants' individual attorneys on the other. Plaintiff also demanded details of Judge King's financial interest in JAMS.[6]

---

[5]     Plaintiff sent a slightly different version of the same letter on January 31, 2020.

[6]     Specifically, plaintiff's attorney requested "a copy of every Ethics Rule 7 or 12 Disclosure, whether initial or supplemental, that has been made by [Judge King] in connection with this matter"; "[e]very offer or acceptance of employment (whether as an arbitrator, mediator, or otherwise) between [Judge King] and" defendants and their attorneys and law firm; and "any ownership or other financial interest [Judge King] possesses regarding JAMS," including "all matters (case name, case number, parties, and counsel) for which he has incurred a financial interest including the instant matter" and "the amount of the financial

5

JAMS maintained it had satisfied its disclosure obligations but agreed to provide, and did provide, the invoices plaintiff requested on February 3.

Later that same month, on February 24 and 25, plaintiff demanded disclosures updated to cover the time period "until today," the names of JAMS arbitrators handling other cases involving defendants and their attorneys, and unspecified "information as to each and every case" involving Jackson Lewis over which Judge King presided as a United States District Judge. (Italics, bolding, and underlining omitted.) JAMS responded that no further disclosures were required, but agreed to provide and did provide "a new set of reports showing Judge King's case history with the parties, lawyers, and firms," which included the single, previously-disclosed arbitration over which Judge King presided where Jackson Lewis was counsel for a party.

In March 2020, plaintiff sent a letter to JAMS seeking to disqualify Judge King. Plaintiff's letter advanced an assortment of reasons for disqualification (e.g., various disclosure demands that JAMS was said not to have satisfied), but his principal complaint concerned disclosures about JAMS's business as an institution. Plaintiff wrote: "It is imperative for [p]laintiff to know how many cases has JAMS undertaken with Jackson

---

interest allocated to [Judge King]." (Italics, bolding, and underlining omitted.) Plaintiff's attorney also claimed not to have received the initial disclosures from September 2017 and "wonder[ed] why these . . . were withheld." As we have already mentioned, plaintiff's attorney asked detailed questions regarding the initial disclosures when JAMS provided them in November 2018.

6

Lewis . . . and/or [d]efendants since [Judge] King became an owner of JAMS in January 1, 2020. . . . Even if JAMS has undertaken a single case with Jackson Lewis . . . and/or [d]efendants since appointment of [Judge] King as Owner of JAMS, [Judge] King has gained financial interest through those cases, pending complete resolution of this case." (Bolding and underlining omitted.) JAMS denied plaintiff's disqualification request, explaining, among other things, that "there is no obligation under California law in a consumer case for JAMS to disclose each additional case it accepts from a party or lawyer or law firm where the case does not involve Judge King."

While JAMS and the parties were corresponding regarding disclosures, Judge King withdrew his January 30, 2020, award because it did not address defendants' request for fees and costs. After soliciting additional briefing on fees and costs, Judge King issued an amended final arbitration award that again dismissed all of plaintiff's claims with prejudice but denied defendants' request for fees and costs.

C.    *Post-Arbitration Trial Court Proceedings*

Defendants petitioned the trial court to confirm the award, and plaintiff petitioned the trial court to vacate the award based on inadequate disclosures. The trial court found plaintiff waived his right to disqualify Judge King by failing to seek disqualification before Judge King found against him on all causes of action. The trial court further found, in the alternative, that Judge King and JAMS made all disclosures required under the Code of Civil Procedure and the California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards). Based on these findings, the

7

court granted defendants' petition to confirm the award and denied plaintiff's petition to vacate the award. The trial court memorialized these rulings in a signed order.[7]

## II. DISCUSSION

Although finding what really is at issue in plaintiff's 88-page opening brief is difficult, we see a single issue: whether Judge King had a continuing duty to disclose matters handled by other JAMS neutrals that involved defendants or their attorneys.[8] Plaintiff contends the Ethics Standards compel such disclosure, but as we will explain, they in fact do not. Plaintiff alternatively argues a requirement for such disclosure is implied by the mandate that an arbitrator disclose all matters that could

---

[7] Because the trial court's signed order amounts to a dismissal of plaintiff's action, it operates as an appealable judgment under Code of Civil Procedure section 581d. (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 283 [order of dismissal under section 581d need not include "express dismissal language" so long as it is "'clear from the record that this was the effect of the court's order'"].)

[8] Defendants contend plaintiff has forfeited all issues raised in his opening brief because he fails to "'[s]tate each point under a separate heading or subheading summarizing the point . . . .'" (Cal. Rules of Court, rule 8.204(a)(1)(B); *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"].) It is true that plaintiff's subheadings often have little connection to what is said in the paragraphs that follow them, but we disregard the noncompliance and have charitably identified the argument presented.

cause a person aware of the facts to reasonably entertain a doubt as to their impartiality but that too is unpersuasive, at least on the facts here.

### A. Legal Framework

Code of Civil Procedure section 1281.9[9] requires arbitrators to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial," and the statute specifically enumerates the following for disclosure: discussions with the parties regarding employment opportunities; the names of parties to certain arbitrations in which the arbitrator has served; and various relationships to the parties, the lawyers, and their families. (§ 1281.9, subd. (a).) Arbitrators are also required, by statute, to make disclosures required under the Ethics Standards. (§ 1281.9, subd. (a)(2).)

Ethics Standard 7 "is intended to identify the matters that must be disclosed by a person nominated or appointed as an arbitrator" (Ethics Standards, std. 7(a)) and defines, among other things, the types of relationships that must be disclosed. (Ethics Standards, std. 7(d).) Standard 7 requires an arbitrator to make initial disclosures "[w]ithin 10 calendar days of service of notice of [his or her] proposed nomination or appointment" (Ethics Standards, std. 7(c)(1)) and supplemental disclosures "within 10 calendar days after the arbitrator becomes aware of the matter" to be disclosed (Ethics Standards, std. 7(c)(2)). The duty to make disclosures required under Standard 7 "is a continuing duty,

---

[9]     Undesignated statutory references that follow are to the Code of Civil Procedure.

9

applying from service of the notice of the arbitrator's proposed nomination or appointment until the conclusion of the arbitration proceeding." (Ethics Standards, std. 7(f).)

Ethics Standard 8 imposes special disclosure requirements for "consumer arbitrations." Consumer arbitrations include arbitrations conducted, as they were in this case, pursuant to an agreement executed by "[a]n employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement." (Ethics Standards, stds. 2(e)(4), 2(d).) Standard 8 builds on the generally applicable disclosure requirements set forth in Standard 7 by requiring proposed arbitrators in consumer arbitrations to disclose relationships between the dispute resolution provider organization (here, JAMS) and a party or lawyer in the arbitration. (Ethics Standards, std. 8(b).)

If the arbitration provider organization is coordinating (or, within the last two years, has coordinated) dispute resolution services for a party, attorney, or law firm involved in the case, the arbitrator must provide information about those cases, with the required level of detail varying with the number of cases at issue. (Ethics Standards, std. 8(b).) If disclosures must be made, the arbitrator must also provide information regarding his or her relationship to the provider organization, "including whether the arbitrator has a financial interest in the provider organization or is an employee of the provider organization . . . ." (Ethics Standards, std. 8(c)(1).) Disclosures required under Standard 8 must be made "within the time and in the same manner as the disclosures required under standard 7(c)(1) [the standard governing initial disclosures]." (Ethics Standards, std. 8(b).)

10

Ethics Standard 12 makes additional rules applicable to consumer arbitrations, e.g., the conditions under which arbitrators may consider an offer to serve as an arbitrator in another case involving the parties or lawyers in a pending arbitration. (Ethics Standards, std. 12(b).) If an arbitrator plans to entertain an offer of the type described in the standard, he or she must disclose this fact and, if the pending arbitration is a consumer arbitration, the disclosure must inform the parties the arbitrator will notify them (as required under Standard 12(d)) if he or she receives such an offer while the arbitration is pending. (Ethics Standards, std. 12(b)(1).)

> B. *The Trial Court Correctly Rejected the Assertion that Judge King Failed to Satisfy His Disclosure Obligations*

Where, as here, the facts are not in dispute, the issue of "whether the arbitrator was required to make certain disclosures is 'a mixed question of fact and law that should be reviewed de novo.'" (*Speier v. The Advantage Fund, LLC* (2021) 63 Cal.App.5th 134, 148 (*Speier*), quoting *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385 (*Haworth*).)

Section 1281.91 imposes a strict 15-day period for a party to notice the disqualification of an arbitrator based on his or her failure to make disclosures required under section 1281.9. (§ 1281.91, subd. (a).) In the absence of a material omission or misrepresentation in the arbitrator's disclosures, a party accordingly waives the right to disqualify an arbitrator after that 15-day period elapses without a disqualification request. (§ 1281.91, subd. (c); *Honeycutt v. JPMorgan Chase Bank, N.A.* (2018) 25 Cal.App.5th 909, 926-927 (*Honeycutt*).)

11

In this case, plaintiff failed to timely request Judge King's disqualification based on his initial disclosures in September 2017, his supplemental disclosures in November 2019, or his supplemental disclosures in January 2020. Any claim predicated on an asserted defect in these disclosures is accordingly waived. Plaintiff, however, insists his March 2020 request for disqualification was timely because it was filed within 15 days of JAMS's response to his demands for disclosures in February 2020. We will assume for argument's sake that the February 2020 demands restarted the 15-day period to serve notice of disqualification under section 1281.91, but we will confine our analysis to only those demands—in other words, there is no need to address any alleged deficiencies in Judge King's earlier disclosures.[10]

Plaintiff dedicates a substantial portion of his opening brief to a recitation of statutes and Ethics Standards, but the only disclosure issue about which he offers any meaningful analysis concerns matters handled by other JAMS neutrals involving defendants and their attorneys. Plaintiff is correct that Standard 8 requires the disclosure of such matters. Judge King, however,

---

[10]    We also assume without deciding that plaintiff did not waive his right to disqualify Judge King by waiting to seek disqualification only after becoming aware, in January 2020, that the arbitration would not be resolved in his favor. (But see *United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 85 ["While an arbitrator has a duty to disclose all of the details required to be disclosed pursuant to section 1281.9 and the Ethics Standards, a party aware that a disclosure is incomplete or otherwise fails to meet the statutory disclosure requirements cannot passively reserve the issue for consideration after the arbitration has concluded"].)

repeatedly made the required disclosures, and nothing in the appellate record indicates JAMS took on additional matters involving defendants or their attorneys after November 2019.[11]

Let us assume, though, that other JAMS neutrals *did* take on new matters involving defendants or their attorneys after November 2019. Plaintiff's contention that Judge King had a continuing duty to disclose these matters under Standard 8 still lacks merit. As we have already mentioned, the timing of Standard 8 disclosures is governed by Standard 7(c)(1)'s provisions relating to *initial* disclosures. (Ethics Standards, std. 8(b); see also Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2021) ¶ 7:58 ["after making any required initial disclosure, the arbitrator has no *continuing* duty to inform himself or herself as to, or to disclose, information about the *provider*"].) And unlike Standard 7, Standard 8 does not expressly provide that it creates a continuing duty. (See Ethics Standards, std. 7(f).) Moreover, Standard 8(a)(1) explains an arbitrator need not make real-time disclosures regarding the provider organization; according to the standard, an arbitrator may rely on information supplied by the provider organization if the organization represents it is "current through the end of the

---

[11] To the extent that plaintiff suggests Judge King failed to disclose matters in which he was *personally* involved with defendants or their attorneys—which he had a duty to disclose under Standards 7(c)(2) and 7(d)(4) regardless of plaintiff's demands—nothing in the appellate record supports this speculation. That distinguishes this case from *Monster Energy Co. v. City Beverages, LLC* (9th Cir. 2019) 940 F.3d 1130 and *Honeycutt*.

immediately preceding calendar quarter or more recent."[12] (Ethics Standards, std. 8(a)(1).)

Independent of Standard 8, plaintiff contends Judge King's failure to provide on-demand disclosures regarding the relationship between JAMS and the parties or their counsel runs afoul of the requirement that he "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." (§ 1281.9, subd. (a); § 170.1, subd. (a)(6)(A)(iii) [providing for disqualification of a judge where "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial"]; Ethics Standards, std. 7(d) ["A proposed arbitrator or arbitrator must disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial"].) This standard is objective (*Speier*, *supra*, 63 Cal.App.5th at 147), meaning ""[t]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning . . . impartiality

---

[12] The authorities plaintiff cites for the proposition that an arbitrator generally has a continuing duty of disclosure do not address Standard 8. (See, e.g., *Honeycutt*, *supra*, 25 Cal.App.5th at 922 ["The Ethics Standards at issue in this appeal are standards 7 and 12"]; *Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 840 ["As with all the topics covered by standard 7, this duty of disclosure is a continuing one"].) One case that does address Standard 8, *Gray v. Chiu* (2013) 212 Cal.App.4th 1355, discusses a prior version that did not exclusively incorporate Standard 7's timing provision for initial disclosures. (*Id.* at 1364-1365.)

provide the governing standard.""" (*Ibid.*, quoting *Haworth, supra,* 50 Cal.4th at 389.)

Once again, the argument fails for lack of anything in the record that suggests there was anything to disclose. (See *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 162 ["[T]here is no requirement in either the Code of Civil Procedure or the Ethics Standards . . . to disclose the lack of" information that would cause a reasonable person to doubt an arbitrator's impartiality].) Regardless, and just as before, plaintiff's argument would still fail even if there were evidence that JAMS took on new matters after November 2019. No reasonable person would question Judge King's impartiality based on some number of increased matters administered by JAMS but not involving Judge King when he had already produced reports identifying hundreds of such cases. (See *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 841 [assuming arguably ambiguous disclosure could be construed to state that an arbitrator had presided over 11 (as opposed to 26) matters involving one of the parties, "the difference would not be sufficiently material to the issue of the arbitrator's impartiality to render the disclosure fatally defective"].)

## DISPOSITION

The trial court's order granting defendants' petition to confirm the arbitration award and denying plaintiff's petition to vacate the award is affirmed. Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

MOOR, J.

16